UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **JAMES K. ARINGTON,** | Case No. 1:16-CV-315 JD |
| **Plaintiff,** | Judge Theresa L. Springmann |
| v. | |

**WORKER'S COMPENSATION BOARD
OF INDIANA: in its Official capacity;**
402 West Washington Street Room W-196
Indianapolis, Indiana 46204

**And the individual Board members: in
their Official and Individual capacity;**

**LINDA HAMILTON;**

**MARY TAIVALKOSKI;**

**JAMES SARKISIAN;**

**DANIEL G. FOOTE;**

**ANDREW S. WARD;**

**GERALD EDIGER;**

**CRYSTEN LEFAVOUR;**

**DIANE PARSONS;**

**AMTRUST NORTH AMERICA, INC.,**
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204

And

**ALANE JANICEK, employed by
AmTrust North America, Inc.: in her
Individual capacity;**

1

**WESCO INSURANCE COMPANY,**
 Corporation Service Company
 2711 Centerville Rd., Suite 400
 Wilmington, DE 19808

And

**CASE MANAGEMENT RELIEF, LLC,**
c/o Julie Funk
7340 Southport Rd.
Indianapolis, IN 46259

And

**JULIE FUNK: in her Individual capacity;**

And

**SUE MITSON: in her Individual capacity;**

And

**SUMMIT PHYSICAL THERAPY, LLC**
c/o Andreas Lohmar
5310 Merchandise Dr.
Fort Wayne, IN 46825

And

**ANDREAS LOHMAR: in his Individual capacity;**

And

**PHYSICAL MEDICINE CONSULTANTS, LLC**
c/o Dana Snyder
7910 W. Jefferson Blvd., Suite 300
Fort Wayne, IN 46804

And

**THOMAS L. LAZOFF, M.D.: in his Individual capacity;**
c/o Dana Snyder

7910 W. Jefferson Blvd., Suite 300
Fort Wayne, IN 46804

**RECONSTRUCTIVE FOOT & ANKLE SPECIALISTS, LLC**
c/o Jonathan Norton
7920 W. Jefferson Blvd., Suite 230
Fort Wayne, IN 46804

And

**JONATHAN NORTON, M.D.:
in his Individual capacity;**

And

**FORT WAYNE PHYSICAL
MEDICINE, P.C.,**
c/o Bruce Boxberger, Esq.
301 W. Jefferson Blvd., Suite 200
Fort Wayne, IN 46804

And

**BILLIE (last name unknown), employed
by Fort Wayne Physical Medicine, P.C.:
in her Individual capacity;**

And

**MARK V. REECER, M.D.: in his
Individual capacity;**
3027 Covington Lake Dr.
Fort Wayne, IN 46804

And

**ORTHOPAEDICS-INDIANAPOLIS,
INC. Aka ORTHINDY,**
c/o Thomas Hutchinson
12800 N. Meridian Street, Suite 300
Carmel, IN 46032

And

**MICHAEL P. SHEA M.D.: in his**
**Individual capacity;**
8450 Northwest Blvd.
Indianapolis, IN 46278

And

**EATON'S TRUCKING SERVICE, INC.,**
524 N. Perry St.
Johnstown, NY 12095
And

**Defendants.**

---

**PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND ENDORSEMENT**

---

Now Comes Plaintiff James K. Arington, by and through counsel, and for his causes of actions states as follows:

1. Plaintiff James K. Arington (Arington) filed his complaint, a motion to preserve, and a motion to proceed *in pauperis* on August 29, 2016. On October 19, 2016, the Court issued an order striking plaintiff's complaint, denying plaintiff's accompanying motions, and taking his *in pauperis* motion under advisement. The Court, in that same order, granted plaintiff time to file an amended complaint until November 18, 2016. On November 2nd counsel was granted to appear Pro Hac Vice. Counsel was granted an extension to file an amended complaint until February 21, 2017. Counsel then requested another extension to file an amended complaint which was granted to be filed on or before May 1, 2017.

2. This is an action for money damages brought pursuant to 42 U.S.C. Sections 1981, 1982, 1983, 1985, 1986, 1988, and the First, Fifth, Eighth, and Fourteenth Amendments to the United

States Constitution, against all defendants. Jurisdiction is based upon 28 U.S.C. Sections 1331 and 1367. This amended complaint also sets out state tort claims.

3. Arington was at all relevant times to this Amended Complaint a resident of Kendallville, Indiana located in DeKalb County; and an employee of Eaton's Trucking Service, Inc.

4. The Indiana Worker's Compensation Board (WCB) was at all relevant times a governmental entity of the state of Indiana responsible for the administration of the worker's compensation program for the state of Indiana and operating under the color of law.

5. The following named defendants; Linda Hamilton (Hamilton), Mary Taivalkoski (Taivalkoski), James Sarkisian (Sarkisian), Daniel G. Foote (Foote), Andrew S. Ward (Ward), Gerald Ediger (Ediger), Crysten LeFavour (LeFavour), and Diane Parsons (Parsons), were at all relevant times active members of the WCB.

6. AmTrust North America, Inc. (AmTrust) was at all relevant times a foreign corporation registered to do business in the state of Indiana.

7. Wesco Insurance Company (Wesco) was at all relevant times a foreign corporation registered to do business in the state of Indiana.

8. Alane Janicek (Janicek) was at all relevant times an employee or agent of defendant AmTrust.

9. Case Management Relief (CMR) was at one time a limited liability company registered in the state of Indiana; however, at all relevant times was administratively dissolved.

10. Summit Physical Therapy (Summit) was at all relevant times a limited liability company registered in the state of Indiana.

11. Andreas Lohmar (Lohmar) was at all relevant times an employee or agent of defendant of Summit.

12. Physical Medicine Consultants (PMC) was at all relevant times a limited liability company registered in the state of Indiana.

13. Reconstructive Foot & Ankle Specialists (Ankle Specialists) was at all relevant times a limited liability company registered in the state of Indiana.

14. Fort Wayne Physical Medicine (FWPM) was at all relevant times a professional corporation licensed in the state of Indiana.

15. Orthopaedics-Indianapolis, Inc. (OrthoIndy) was at all relevant times a company registered in the state of Indiana.

16. Thomas L. Lazoff, M.D. (Dr. Lazoff) was at all relevant times an employee or agent of defendant PMC.

17. Billie (last name unknown) (Billie) was at all relevant times an employee or agent of defendant FWPM.

18. Mark V. Reecer M.D (Dr. Reecer) was at all relevant times an employee or agent of defendant FWPM.

19. Michael P. Shea, M.D. (Dr. Shea) was at all relevant times an employee or agent of defendant OrhoIndy.

20. Eaton's Trucking Services, Inc. (Eaton's) was at all relevant times a foreign corporation registered in the state of New York.

21. Defendants Summit, PMC, Ankle Specialists, FWPM, OrthoIndy, Lazoff, Norton, Reecer, and Shea were medical care providers approved by WCB, AmTrust and Wesco.

22. Arington injured his right ankle on 11/11/2014 in Garrett Indiana while picking up a load to transport for his employer Eaton's. Arington contacted a dispatcher to report the injury at approximately 8:30 a.m.

23. The next morning Arintgon was given a load for transport to Therma True in Butler Indiana and had difficulty driving. Upon completion of the transport he called the dispatcher at Eaton's and reported this.

24. In 2014, Arington filed for worker's compensation and began treatment at Parkview Occupational Health Center in Kendallville, IN.

25. On or about 12/3/2014 defendant CMR was employed by defendants AmTrust and/or Wesco to provide the management of medical treatment of Arington's injury. Defendant Sue Mitson, RN, an employee of CMR was designated as the medical case manager.

26. CMR through Funk, Mitson managed the medical care for Arington, including scheduling appoints and controlling treatment modality

27. On or about 12/10/2014 Arington saw defendant Dr. Lazoff at defendant PMC who ordered an MRI which revealed an "avulsion fracture of right ankle". Dr. Lazoff then ordered a consult with a podiatrist before he would provide further treatment. Arington was prescribed a 3-D boot.

28. CMR obtained an appointment for Arington with defendant Dr. Jon Norton at defendant Ankle Specialists for 1/6/2015. Dr. Norton advised Arington to continue wearing the 3-D boot with an ace wrap.

29. On or about 1/7/2015 Arington saw Dr. Lazoff who prescribed continued use of the 3-D boot and reported to CMR that Arington would likely heal from the "severe ankle sprain".

30. Sometime in January 2015, the 3-D boot became defective. Drs, Lazoff and Norton refused to provide a replacement as did the medical case manager Mitson. Arington had to purchase his own brace as the boot requires a prescription. He used the brace and complained to Mitson about the treatment and lack of care.

31.     On or about 1/27/2015 Arington went to the emergency room at Parkview Noble Hospital due to severe pain in the injured right ankle and his left ankle. He was unable to walk. He was advised the left ankle pain was caused from an unequal gait and to use a heel wedge to correct it. The wedge was not prescribed by any of the defendant insurance companies or physician and therefore was and has not been provided. Arington continues to suffer from this complication.

32.     Arington's right and left ankle continue to cause severe pain and medically deteriorate.

33.     On or about 3/3/2015 Arington attended an appointment with Dr. Norton and defendant Ankle Specialists. At the appointment Arington and Dr. Norton discussed surgery to the injured ankle because it would be necessary if the ankle did not improve. During the discussion Arington's father was present, and Dr. Norton stated, "I am limited by what I can do because of the insurance company." This significant because it is an admission by Dr. Norton that he accepts and condones medical treatment of his patient to be dictated by unlicensed and unqualified personnel from the defendant insurance companies, in this case Mitson and defendant Alane Janicek.

34.     Defendants AmTrust, Wesco, Mitson, and Janicek in dictating medical care and treatment of Arington violated his constitutional rights and committed a felony under Indiana state law.

35.     On or about 3/10/2015 Arington returned to the emergency room at Parkview Noble Hospital due the continued pain in his ankles because of his original injury and the complication to his other ankle.  (¶ 26)

36.     On or about 3/16/2015 Arington went to an appointment with Dr. Douglas Bolda for a review of his medical case. Dr. Bolda gave Arington a referral for physical therapy since the insurance company's doctors had not prescribed this treatment.

37. On or about 4/07/2015 Arington attended an appointment with Dr. Norton at defendant Ankle Specialists. At the appointment, Dr. Norton told Arington that he would never be Department of Transportation "DOT" certified again because of the injury to his ankle. This statement by Dr. Norton indicates that Arington's ankle was severely injured and that the treatment modality being prescribed was not sufficient. Then Dr. Norton prescribed Arington to undergo a Functional Capacity Evaluation (FCE).

38. On or about 4/14/2015 Arington went to defendant Summit and was administered the FCE by defendant Lohmar. In Lohmar's report, he stated "He did walk in the clinic w/o his boot as well without any changes in his gait." This was a false statement by Lohmar. During the FCE Arington was in severe pain and his blood pressure and pulse rate became elevated to a level that Lohmar stopped the FCE until they return to safe levels. Arington was unable to complete some parts of the FCE but were reported by Lohmar as completed. The report was submitted to WCB. Arington alleges Summit and Lohmar falsified the FCE report. He has a witness to substantiate this.

39. On or about 4/20/2015 Arington, accompanied by his father Rexal Arington, went to an appointment with Dr. Lazoff. Arington states that the examination by Dr. Lazoff was perfunctory and Dr. Lazoff did not directly view or inspect his injured right ankle, however Dr. Lazoff attested in the medical records on that date he examined Arington and the functionality of his injured ankle, and that Arington's ability to walk and his gait was unremarkable. Dr. Lazoff also declared that Arington's injury had reached a state of maximum medical improvement. The medical records do not accurately state what transpired during the examination nor accurately depict his physical and medical condition. Consequently, treatment for Arington's injury was stopped and the medical records were used by WCB to determine the status of continuation of benefits.

Arington alleges that Dr. Lazoff falsified the medical records as part of a conspiracy with the defendant insurers, physicians, and CMR.

40. On or about 5/27/2015, his treatment having been medically released by the defendant physicians and insurers, Arington made an appointment with Dr. Mark Mayer at Coldwater Orthopedics for an independent opinion of his injured ankle. Dr. Mayer ordered x-rays and on 6/3/2015 substantiated the injury but did not conclude that maximum medical improvement had been reached and referred Arington to a foot ankle specialist.

41. Arington petitioned for an independent medical evaluation (IME) under Ind. Code § 22-3-3-7 and the WCB appointed defendant Dr. Shea to perform the IME.

42. On or about 7/06/2015 Arington went to defendant OrthoIndy and Dr. Shea for the IME of his injured right ankle. The only descriptive term used by Dr. Shea in his report to refer to the injured appendage was "Clutch Leg" which the average person would consider to be the left leg. His report questioned whether surgical intervention was warranted. Based on his findings he recommended an EMG to rule out nerve damage and suggested an injection. Dr. Shea's conclusion was "I feel he is most likely at maximum medical improvement." As of the date of the bifurcated hearing on 12/01/2015, the report remained unchanged and was presented to the WCB and entered as evidence and used to confirm the findings of Dr. Lazoff. The report was changed on or about 2/19/2016 after ex parte communications with other defendants to reflect the proper injured appendage, however the substance of the report was unchanged.

43. On or about 8/04/2015 defendant Mitson made an appointment with defendant Dr. Reecer, an employee of defendant FWPM, for an EMG. On that date Arington was accused by defendant Billie and Dr. Reecer of being belligerent and disruptive at the appointment. This was immediately reported to Mitson by Billie and Dr. Reecer. Arington denies that he was at any time disruptive

10

or belligerent and alleges that Mitson, Dr. Reecer, and Billie fabricated the accusation. Because of this accusation Arington's benefits were suspended by the WCB.

44. On or about 8/4/2015, based on the accusations, AmTrust and Wesco filed a Notice of Suspension of Benefits under Indiana Code 22-3-3-4(c) and/or 22-3-3-6(a). Plaintiff alleges AmTrust, Wesco, and Janicek acted in bad faith and in concert with CMR and Mitson, FWPM, Dr. Reecer and Billie to deny his workers compensation benefits, protected property rights under the U.S. Constitution.

45. On or about 8/10/2015 Arington had an MRI ordered by Dr. Shawn Kidder an independent physician. The results showed that the injured right ankle had not healed properly, almost four months after having been declared his injury had reached maximum medical improvement by Dr. Lazoff and the treatment rendered under the worker compensation claim had been terminated.

46. On or about 8/18/2015 Arington saw Dr. Kidder who examined Arington and the recent MRI. The MRI revealed the condition of his injured right ankle had deteriorated since his release from Drs. Lazoff and Norton in April 2015. The findings also showed it to be compatible with a chronic, stable osteochondral defect. Dr. Kidder opined Arington to remain off work pending ankle surgery and post-op rehabilitation. This information was properly conveyed to the appropriate Defendants.

47. Arington continued treatment prescribed by Dr. Kidder in 2015 and 2016 for his right ankle injury and his left ankle pain. He also continued to litigate his worker compensation claim with the WCB.

48. On or about 9/02/2015 WCB held a pre-trial conference in Fort Wayne with defendant Foote presiding. The intervention by AmTrust, Wesco, Janicek, CMR, Funk, and Mitson regarding Arington's medical care and the accusations made by Dr. Reecer, and Billie were

discussed. Foote acknowledged the improper medical care and treatment stating, "That is just the way they do business." condoning the intervention of the defendants and accordingly the policy and custom of the WCB.

49. On or about 12/01/2015 the WCB held a bifurcated hearing with Foote presiding. Mitson testified under oath that: she had altered Arington's medical records; the insurance company (AmTrust and Wesco) told her to schedule the EMG with Dr. Reecer; she talked to Billie who informed her Arington was disruptive at the office appointment; and further defendants stated he was also belligerent. Arington denies he was disruptive and belligerent and submitted a transcript and an audio recording of the appointment with D. Reecer to the WCB. Arington alleges that Mitson, acting as a representative of CMR and under the direction of AmTrust, Wesco and Janicek conspired to deny him worker compensation benefits.

50. At the hearing, Foote allowed the IME report submitted by Dr. Shea to be admitted as evidence suppressing the fact that Dr. Shea had examined the "clutch leg" instead of the injured right ankle. The WCB used the report and the Notice of Suspension of Benefits filed by AmTrust, Wesco, and Janicek to deny Arington workers compensation benefits.

51. Foote, aware of the exculpatory nature of the transcript and audio recording of the accusations about the appointment in Dr. Reecer's office, denied it as being evidentiary and declared it "moot." In doing so he violated Plaintiff's constitutional rights to equal protection under the law, and due process. Foote also suppressed the admission by Mitson that she scheduled the EMG without a physician's order or prescription.

52. The actions of Foote and the individual members of the WCB, defendants Hamilton, Taivalkoski, Sarkisian, Ward, Ediger, LeFavour, and Parsons, who later ratified his actions,

exhibit policies and customs that serve to create a haven for the insurers and providers against the Plaintiff and all who seek worker compensation benefits in the state.

53. During his injury and litigation with WCB Arington has been denied timely access to records pertinent to his worker compensation claim and his medical treatment by the WCB and Foote. Specifically, the WCB and Foote denied Arington discovery of the case medical manager's notes (Notes) chronicling physician access and treatment plans. The Notes serve as communication between CMR, AmTrust, Wesco, the insurance approved providers – Drs., Lazoff, Norton, Reecer, and Shea - and supposedly contained privileged information between employer and employee. Finally, on or about 3/22/2017, over two years and four months from the date of his injury, Arington received the Notes, however the alleged privileged information was redacted. Upon information and belief Arington alleges delay in allowing the discovery of the Notes with redacted information by the WCB and Foote is an effort to conceal the conspiracy of Defendants to deny and delay proper and timely medical care and treatment to avoid financial responsibility. This demonstrates deliberate indifference toward Arington's medical care and violates his constitutional rights under U.S.C. 42 §§ 1983, 1985 and 1986.

54. On or about 7/23/2015 a letter from the WCB ordering a medical test of the right leg based on Dr. Shea's IME of the "Clutch leg" report. The report was included with the letter. The importance of the letter was not discovered until the Notes were released and reviewed by Arington on or about 3/22/2017. The Notes revealed that Dr. Shea would not order or prescribe the EMG nor would he do the test. This substantiates AmTrust, Wesco, and Janicek controlled Arington's medical treatment, and Mitson scheduled the EMG with Dr. Reecer without a licensed physician's order or prescription.

55. On or about 3/23/2016 Arington received a second independent medical opinion from Dr. Mark Mayer who stated that surgery was needed to repair Arington's injured right ankle and made a referral to an appropriate surgeon.

56. On or about 5/3/2016 Arington saw Dr. Mark Maskill, an orthopedic surgeon who verified that surgery was necessary to repair Arington's ankle. The medical records and opinions of these physicians have been presented to the appropriate defendants and surgery has been denied. Arington attempted to have the surgery covered by his private insurer but was denied because Dr. Maskill was an out of state physician.

57. Another bifurcated hearing by the WCB on Arington's worker compensation claim is scheduled for late 2017. This will extend the time elapsed from the date of his injury to 3 years or more; and the time that his benefits and medical care will have been suspended to almost 2 years. All the while his condition continues to deteriorate and he suffers. This delay in finalizing the claim is deliberate and constitutes abandonment of his medical care and treatment.

58. Arington continues to suffer pain and the inability to work due to his injury.

59. Arington has suffered mental and emotional distress from the ordeal he was forced to endure by the Defendants in denying and delaying proper medical care and treatment.

60. The Defendants acted with deliberate indifference in denying and delaying proper medical care and treatment to Arington.

61. The Defendants acted with reckless disregard for the Arington's health and well-being.

62. Defendants PMC, Ankle Specialists, FWPM, OrthoIndy, and Drs. Lazoff, Norton, Reecer, and Shea failed to protect plaintiff from foreseeable harm by failing to provide proper and timely medical care and treatment which demonstrated willful and/or wanton reckless conduct and/or maliciousness.

63. The Defendants owed a duty to Arington to provide proper and timely medical care for his injuries and they breached that duty by denying and delaying proper medical care and treatment, which is the proximate cause of the new injuries and deterioration of his original injury.

64. Arington states his independent treating and examining physicians have opined his ankle has deteriorated significantly based on the MRIs, and any recovery is very limited and if he does obtain the surgery he will suffer permanent injury and loss of his ability to work.

65. Upon information and belief Arington alleges that defendants Dr. Lazoff, Dr. Norton, Dr. Reecer, Dr. Shea, and Lohman are "insurance approved" providers who are repeatedly used by the insurer defendants and are known to the WCB.

66. Defendant Drs., Lazoff, Norton, Reecer, and Shea rendered improper medical care by not obtaining an opinion from a qualified orthopedic surgeon. These defendants acquiesced to the directions and orders of the defendant insurers and their agents – AmTrust, Wesco, CMR, Janicek, Funk, and Mitson breaching their fiduciary duty owed to Arington.

67. Defendants PMC, Ankle Specialists, FWPM, and OrthoIndy, employers of the physician defendants are responsible for physicians' actions set forth in this Complaint.

68. Defendants Lohmar, and Summit misrepresented Arington's medical condition by falsifying the FCE and report conducted by Lohmar and submitting it to defendant insurers.

69. Defendants Dr. Lazoff and PMC misrepresented Arington's medical condition by falsifying his medical record and submitting it to defendant insurers.

70. Defendants Dr. Reecer, Billie, and FWPM misrepresented Arington's demeanor and conduct at a medical appointment in a report to the defendant insurers who then filed for a suspension of benefits pursuant to Ind. Code 22-3-3-4(c) and/or 22-3-3-6(a) with the WCB.

71. Defendants AmTrust, Wesco, CMR, Funk, Janicek, and Mitson breached their fiduciary duty owed to Arington in the management and authorization of his medical care and treatment when Mitson ordered Arington to have an EMG without a licensed physician's order or prescription. And under Ind. Code this act constitutes a felony crime.

72. Defendants AmTrust, Wesco, CMR, Funk, Janicek, and Mitson breached their fiduciary duty owed to Arington in the management and authorization of his medical care and treatment by redacting information contained in the Notes.

73. Defendants WCB, and Foote breached their fiduciary duty owed to Arington in the administration, and the promulgating of policies and customs that favored the insurers and providers resulted in the denial and delay of proper and timely medical care.

74. Defendants WCB, and Foote breached their fiduciary duty owed to Arington by allowing falsified medical records/reports as a basis for its decisions; by refusing to consider independent medical records/reports submitted by Arington; ignoring "exculpatory" evidence; and delaying the release of medical records/reports affecting his worker compensation claim. (¶ 45–50)

75. The policies and customs of the WCB and the acquiescence to those policies and customs by all other Defendants serve to treat the Plaintiff and all other worker compensation claimants differently than the public of the state of Indiana, thereby designating the injured workers as a separate class of individuals.

76. All Defendants, including Eaton's, jointly conspired to deny and delay proper and timely medical care to Arington with the purpose of financial gain. As a direct and proximate result of said acts of Defendants Arington suffered the following injuries and damages:

a. Violation of his constitutional rights under the First and Eighth Amendments to the United States Constitution to be free from deliberate indifference in providing medical care and treatment;

b. Violation of his constitutional rights under the First and Eighth Amendments to the United States Constitution to be free of denial of proper and timely medical care and treatment;

c. Violation of his constitutional rights under the First, Fifth and Fourteenth Amendments to the United States Constitution to due process;

d. Violation of his constitutional rights under the and Fourteenth Amendment to the United States Constitution to equal protection under the law;

e. Violation of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution to be free from deprivation of rights;

77. As a direct and proximate result of said acts of all Defendants Arington suffered the following injuries and damages:

a. Physical injury, pain and suffering;

b. Emotional and psychological distress, humiliation, and indignity;

c. loss of worker compensation benefits, loss of wages, medical and litigation expenses.

COUNT I - 42 U.S.C. SECTION 1983/FIRST AND EIGHTH AMENDMENT VIOLATIONS FOR DELIBERATE INDIFFERENCE IN PROVIDING MEDICAL CARE

78. The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

COUNT II - 42 U.S.C. SECTION 1983/FIRST, FIFTH AND FOURTEENTH AMENDMENT VIOLATIONSFOR DUE PROCESS

79. The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

### COUNT III - 42 U.S.C. SECTION 1983/FOURTEENTH AMENDMENT VIOLATIONS FOR EQUAL PROTECTION UNDER LAW

80.     The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

### COUNT IV - 42 U.S.C. SECTION 1983/FIRST AND FOURTEENTH AMENDMENT VIOLATIONS OF DUE PROCESS IN PROVIDING MEDICAL CARE

81.     The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

### COUNT V - 42 U.S.C. SECTION 1983/FIRST AND EIGHTH AMENDMENT VIOLATIONS OF DENIAL AND DELAY IN PROVIDING MEDICAL CARE

82.     The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

### COUNT VI - 42 U.S.C. SECTIONS 1985 & 1986/FOURTEENTH AMENDMENT VIOLATIONS FOR CONSPIRACY TO DEPRIVE DUE PROCESS

83.     The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

### COUNT VII - 42 U.S.C. SECTIONS 1981 & 1982/FIRST AND FOURTEENTH AMENDMENT VIOLATIONS FOR DEPRIVATION OF RIGHTS

84.     The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

### COUNT VIII – STATE TORT CLAIMS OF NEGLIGENCE AND GROSS NEGLIGENCE

85.     The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

### COUNT IX – STATE TORT CLAIMS OF BREACH OF FIDUCIARY DUTY

86.     The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

COUNT X – STATE TORT CLAIMS OF BAD FAITH IN INSURANCE CONTRACT

87. The allegations set forth in paragraphs 1 through 77 of this Complaint are incorporated herein by reference.

**WHEREFORE**, Arington requests that this Court find for the Plaintiff against all defendants jointly and severally as follows:

A. Counts I, II, III, IV, V, VI, VII, as to each count - for compensatory damages in the amount of $5,000,000.00, reasonable attorneys' fees as permitted by 42 U.S.C. §1988, costs, prejudgment and post-judgment interest; and punitive damages in the amount of $5,000,000.00.

B. Count VIII - compensatory damages in the amount of $5,000,000.00, reasonable attorneys as permitted by statute, costs, prejudgment and post-judgment interest; and punitive damages in the amount of $5,000,000.00.

C. Counts IX, X, as to each count - compensatory damages in the amount of $7,500,000.00, reasonable attorneys as permitted by statute, costs prejudgment and post-judgment interest; and punitive damages in the amount of $7,500,000.00.

D. Award such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Wesley M. Miller Jr.*

Wesley M. Miller Jr. (0043875 OH)
P.O. Box 11417
Toledo, OH 43611
Tel: 419-508-7892
Email: wes@wesleymillerlaw.com
Fax: 567-312-8703
Counsel for Plaintiff

**Jury Endorsement**

Plaintiff demands a trial by jury on all Counts.

<u>*/s/ Wesley M. Miller Jr.*</u>